

SO ORDERED.

SIGNED this 21st day of December, 2015.

_____
UNITED STATES BANKRUPTCY JUDGE

---

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CABLE'S ENTERPRISE, LLC, | ) | |
| | ) | |
| Debtor. | ) | Case No. 14-10782 |
| | ) | |
| CABLE'S ENTERPRISE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 14-02032 |
| | ) | |
| v. | ) | |
| | ) | |
| BOB DUNN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This adversary proceeding came before the Court for trial on October 15, 2015, in Greensboro, North Carolina, upon the Complaint filed by Cable's Enterprise, LLC (the "Debtor" or "Plaintiff"), seeking: (1) to determine the secured status of a creditor under 11 U.S.C. § 506; (2) to avoid a claim of lien under 11 U.S.C. §§ 544 and 541; (3) to recover damages for injury to a 2006 Caterpillar 325 DL Excavator (the "Excavator"); (4) to recover damages for breach of

1

contract; and (5) to recover damages for breach of the implied covenant of good faith and fair dealing.[1]  Also before the Court was a counterclaim filed by Bob Dunn (the "Defendant"), seeking damages against the Debtor for breach of agreement.  At the hearing, Darren McDonough and Samantha Brumbaugh appeared as counsel for the Debtor and Amiel Rossabi appeared as counsel for the Defendant.  Richard Taft Cable, owner and operator of Cable's Enterprise, LLC, appeared and testified for the Debtor.  The Debtor also introduced the testimony of Jeffrey Scott Wyrick, the primary operator of the Excavator during the relevant time periods herein.  The Defendant appeared and testified on his own behalf.  After considering the pleadings, the arguments of counsel, the testimony before the Court, and the record in this case, the Court will award damages to the Debtor for injuries to the Excavator in the amount of $7,461.61, deny the Defendant's request for damages, and find that the Defendant is a secured claimant in the amount of $38.39 for the reasons as set forth herein.

## FINDINGS OF FACT

The Debtor is a site development contractor, a company which has worked for and obtained several loans from the Defendant.  In early 2014, the Debtor encountered significant financial distress.  Mr. Cable, the Debtor's owner/operator, sent the Defendant several SMS messages.  In one message, Mr. Cable noted that he would allow the Defendant to use the company's 2006 Caterpillar 325 DL Excavator in exchange for a loan.  Mr. Cable added that the Defendant could use the Excavator until it could run no more, joking "[i]f it will help I'll get naked and run the Excavator for you[.]"  The Defendant did not respond.

Over the course of several more weeks, the Debtor attempted to obtain a loan from the Defendant.  Eventually, on April 18, 2014, the Defendant agreed to loan the Debtor $9,920.  In

---

[1] As further discussed herein, the Complaint contained an additional cause of action for turnover of property, a matter resolved by order dated December 5, 2014.

2

exchange for the loan, the Debtor promised to pay the Defendant $10,500 on or before April 28, 2014. The Debtor also allowed the Defendant to keep and use the Excavator on his farm until payment of the debt in full.[2]

The Debtor failed to pay the Defendant on or before April 28, 2014, and the Excavator remained on the Defendant's farm. On May 5, 2014, the Debtor issued a $3,000 check in partial satisfaction of the debt; the Excavator continued to remain on the Defendant's farm.[3] The Defendant used the Excavator seven days a week, with little interruptions in use, for roughly four months, to clear and pile trees/turn pastures.[4]

During this time, an acquaintance of both parties and an individual experienced in the operation of heavy machinery, Mr. Wyrick, worked as the primary operator of the Excavator. On at least one occasion, however, the Defendant attempted to operate the machine[5] and got it stuck in the mud, damaging its windows and some of its sheet metal/doors.[6] On another occasion, the Defendant tried to use the Excavator to put out a fire. This use resulted in damage to the machine's lights and one of its hoses.[7]

While the Excavator remained on the farm, the Debtor filed for bankruptcy. Shortly thereafter, the Defendant filed a proof of claim in the amount of $18,500, seeking $10,500[8] as repayment for the original loan and $8,000 as reimbursement for work performed on the machine

---

[2] To confirm their arrangement, the Debtor issued an invoice, attached to the Complaint as Exhibit A (the "Invoice"). The Invoice purports to sell the Excavator for $9,920, and states, "[t]he Excavator Will Remain in Bobby Dunn's Possession Being Used on His Farm." No further details appear on the Invoice.
[3] While the Defendant argued that this check constituted payment on a different loan, the check clearly stated that it was meant as partial repayment for the April 18, 2014 loan.
[4] The undisputed testimony established that normal usage of an excavator constitutes forty (40) hours per week.
[5] The Defendant testified that he had no operating experience at this time.
[6] Because the windows were severely impaired, the Defendant simply removed them from the Excavator. Thereafter, the Defendant placed a tarp over the Excavator when not in use; he never replaced the windows.
[7] Mr. Wyrick testified that this hose was repaired on site, because the Excavator would not run properly without it.
[8] This figure is erroneous and does not credit the Debtor for his May 5, 2014 payment of $3,000.

3

while on the farm (the "Claim"). The Claim asserts a perfected security interest in the Excavator and lists the debt as fully secured.

In response to the Claim, the Debtor instituted the present proceeding, seeking: (1) to determine the Defendant's status as creditor under 11 U.S.C. § 506 (the "First Cause of Action"); (2) to avoid the Defendant's claim of lien under 11 U.S.C. §§ 544 and 541 (the "Second Cause of Action"); (3) to recover the Excavator under 11 U.S.C. § 542 (the "Third Cause of Action"); (4) to recover damages for injury to the Excavator (the "Fourth Cause of Action"); (5) to recover damages for breach of contract (the "Fifth Cause of Action"); and (6) to recover damages for the implied covenant of good faith and fair dealing (the "Sixth Cause of Action"). The Defendant counterclaimed, alleging that the Debtor breached the parties' agreement by failing to reimburse him for repairs he performed on the machine at the farm, with damages to be proven at trial (the "Counterclaim").

At the Debtor's request, the Court held an expedited hearing on the Third Cause of Action on November 24, 2014 (the "Turnover Hearing"). At the Turnover Hearing, the Debtor testified that the Excavator should be valued at $95,000. Both parties conceded that the Excavator constitutes property of the estate under 11 U.S.C. § 541 and noted that the machine is encumbered by a first priority lien held by Caterpillar Financial Services Corporation ("CAT").[9] As of the date of the petition, the balance on this debt totaled $89,831.15.

Following the conclusion of the Turnover Hearing, the Court entered an order directing immediate turnover of the Excavator (the "Turnover Order"). While depriving the Defendant of his possession of the Excavator, the order reserved the Defendant's claim of perfection of a

---

[9] Caterpillar Financial Services Corporation holds two liens against property of the estate, one against the Excavator and another against a 2004 Caterpillar 330CL Excavator. These liens are cross-collateralized.

security interest in the machine by possession, noting that the Defendant would be treated as a secured claimant until entry of a final order.

The proceeding again came before the Court for trial on October 15, 2015 (the "Trial Hearing"). At the Trial Hearing, the Debtor requested over $26,000 for repair services performed/to be performed on the Excavator upon its return from the Defendant. In contrast, the Defendant requested $13,750.64 for services performed on the Excavator while on the farm. At the conclusion of the Trial Hearing, the Court took the First, Second, Fourth, Fifth, and Sixth Causes of Action, as well as the Defendant's Counterclaim, under advisement.

## **DISCUSSION**

The Court will address the First, Second, and Fourth Causes of action separately, followed by a combined analysis of the Fifth and Six Causes of action. Lastly, the Court will assess the Defendant's Counterclaim.

### First Cause of Action: Determination of Secured Status of Claim

The First Cause of Action seeks an order finding that the Excavator has a value equal to or less than the lien in favor of CAT, such that the Defendant's claim may be deemed unsecured under 11 U.S.C. § 506. Section 506 provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1).

At the Turnover Hearing, the Debtor testified to a value of the Excavator in the amount of $95,000. Neither party rebutted or revisited this value at trial. CAT has a first priority lien on the machine in the amount of $89,831.15. Subtracting this figure from $95,000 leaves $5,168.85. Thus, the Defendant's claim may be secured in an amount up to $5,168.85. After

5

consideration of the remaining requests for relief as later discussed herein, however, the Court finds that the Defendant is a secured claimant in the amount of $38.39.

### Second Cause of Action: Avoidance of Claim of Lien

The Second Cause of Action asserts that the Defendant's claim of lien should be avoided under 11 U.S.C. §§ 544 and 541.  Here, the Debtor argues that: (1) a security interest never attached to the Excavator, and (2) even if a security interest attached to the machine, it was not properly perfected before the filing of the petition and, therefore, may be avoided.

Under the Uniform Commercial Code as adopted by the state of North Carolina, a security interest attaches when it becomes enforceable against the debtor.  N.C. Gen. Stat. § 25-9-207(a).  A security interest becomes enforceable when: (a) value has been given; (b) the debtor has rights in the collateral; and (c) the debtor has authenticated a security agreement that provides a description of the collateral, or "[t]he collateral . . . is in the possession of the secured party under G.S. 25-9-313 pursuant to the debtor's security agreement[.]"  N.C. Gen. Stat. § 25-9-207(b).

In this case, it is undisputed that the Defendant gave value to the Debtor in the sum of $9,920 on April 18, 2014.  It is also undisputed that the Debtor has rights in the Excavator.  Both parties further stipulated that the Debtor failed to authenticate a security agreement in support of the loan.  Nevertheless, from early 2014 until the Court entered the Turnover Order, the Excavator remained in the Defendant's possession under N.C. Gen. Stat. § 25-9-313.  Per the agreement of the parties, the Excavator acted as a pledge for the repayment of the loan.  Thus, the Defendant's security interest in the Excavator attached on the date of the parties' agreement, April 18, 2014.  See N.C. Gen. Stat. § 25-9-207 cmt. 4 ("Possession as contemplated by Section 9-313 is possession for purposes of subsection (b)(3)(B), even though it may not constitute

possession 'pursuant to the debtor's agreement' and consequently might not serve as a substitute for an authenticated security agreement under subsection (b)(3)(A)."); see also Rentenbach Constructors, Inc. v. CM P'ship, 181 N.C.App. 268, 271, 639 S.E.2d 16, 18 (2007) (noting that although official code comments are not binding, they may be used to ascertain legislative intent); 19 Williston on Contracts § 53:43 (4th ed.) ("Because possession operates to provide a good substitute for the evidentiary role that a written security agreement plays, . . . the [Commercial] Code [does not] require[] a written and signed . . . security agreement where attachment, enforceability and perfection occur through possession. . . .").

    Because (1) the Defendant's security interest attached on April 18, 2014, and (2) the Defendant was in possession of the Excavator at this time, the interest may not be avoided in this case under 11 U.S.C. §§ 544 and 541. Section 544(a) provides that the trustee or debtor-in-possession "may avoid any transfer of property of the debtor" that is voidable by a creditor who obtains a judicial lien on the debtor's property as of the commencement of the case, "whether or not such a creditor exists." 11 U.S.C. 544(a). Under North Carolina law, "conflicting perfected security interests . . . rank according to priority in time of filing or perfection." N.C. Gen. Stat. § 25-9-322(a)(1). In this case, the Defendant's security interest attached and was perfected by possession on April 18, 2014. A hypothetical creditor with a judicial lien on the debtor's property as of the commencement of the case, July 9, 2014, would not be able to avoid this prior, perfected interest. See Waterhouse v. Carolina Limousine Mfg., Inc., 96 N.C. App. 109, 110-11, 384 S.E.2d 293, 295 (1989) (noting that, "[a]lthough the issue of whether a levy by the sheriff interrupts a creditor's possession has . . . not been answered in North Carolina, other states with [similar] statutory provisions . . . have held that a prior perfected interest is superior to the interest of a judgment creditor who has obtained a lien"; describing the lower court's conclusion

that a judgment creditor's levy upon the debtor's property interrupted another's claim of perfection by possession as a "misapprehension of applicable law[,]" but nevertheless upholding this uncontested finding as the law of the case). Therefore, the Defendant's claim of lien may not be avoided under 11 U.S.C. §§ 544 and 541 and the Second Cause of Action is DENIED.

### Fourth Cause of Action: Damage to Personal Property

In the Fourth Cause of Action, the Debtor requests damages for injury to personal property, which the court interprets as a request for damages under N.C. Gen. Stat. §§ 25-9-207(a) and 25-9-625(b). Under N.C. Gen. Stat. § 25-9-207(a), a secured party is required to "use reasonable care in the custody and preservation of collateral in the secured party's possession." Id.[10] A party which fails to comply with this provision "is liable for damages in the amount of any [resulting] loss. . . ." N.C. Gen. Stat. § 25-9-625(b). "A question of fact is presented whether any damage or loss is attributable to the secured party's failure to meet the standard of reasonable care, but loss or damage that occurs while the property is in the secured party's possession is rebuttably presumed to be the result of negligence." 19 Williston on Contracts § 53:45 (4th ed.).

At the Trial Hearing, Mr. Cable testified that the Excavator had a hairline crack in its windshield at the time of the parties' agreement but ran well. Mr. Wyrick confirmed this testimony and noted that in contrast, when it was returned to the Debtor, the Excavator was missing its windshields, its lights, one of its mirrors, and had damage to its sheet metal and doors. Mr. Cable submitted several exhibits at the Trial Hearing purporting to represent damages

---

[10] This duty continues after default. N.C. Gen. Stat. § 25-9-601(b). Indeed, "the duty to exercise reasonable care may not be disclaimed by agreement, although . . . parties remain free to determine by agreement standards that are not manifestly unreasonable as to what constitutes reasonable care." N.C. Gen. Stat. § 25-9-207 cmt. 2. While the Defendant attempted to argue that the Debtor's offer to use the Excavator until it could run no more indicated that the parties intended for him to be able to use the Excavator for as many hours and in any fashion that he liked, the Court does not believe that such unfettered use may reasonably be presumed to have been a condition of the parties' April 18, 2014 agreement. This statement was made in jest and does not establish any duty of care.

8

for these injuries, as well as several other injuries which he claims occurred to the Excavator in the Defendant's possession.  The Court has reviewed these exhibits and finds that the Excavator sustained damages in the amount of $7,461.61 while on the Defendant's farm.

The Court arrived at this figure after careful review of Plaintiff's Exhibits 5, 6, 7, and 8. Exhibit 5 represents an estimate of repairs/maintenance to be performed on the Excavator, prepared by Gregory Poole within three days of the Excavator's return to the Debtor; Exhibit 6 represents the actual expenses of performing certain of these services on the machine; Exhibit 7 represents estimated expenses for repairing the Excavator's doors and replacing its injectors; and Exhibit 8 represents expenses incurred in fixing the windows of the machine.  Exhibits 5 and 6 overlap to some extent; Exhibits 5, 7, and 8 also appear to reference similar damages.  Of those entries in Exhibit 5 which do not appear to be represented by Exhibits 6, 7, or 8, the Court finds that the Excavator incurred damages in the amount of $750 to its wipers, injured when the Defendant removed the machine's windows.[11]  From Exhibit 6, the Court finds that the Excavator incurred additional damages of $4,616.82: $600 in assessment fees; $800 in damages to its guards (bottom pan), injured when the Defendant attempted to operate it in the mud; $910.96 in damages to its lights, broken by the fire; $1,813.15 in damages to its tracking; $412.71 in damages to its pumps; and roughly $80 in taxes.[12]  From Exhibit 7, the Court finds

---

[11] The remaining entries were not sufficiently established as damages incurred on the Defendant's farm.  Mr. Wyrick, the least interested witness, specifically testified that the monitor was working when the machine left the farm.  Mr. Cable implied that the air conditioner was damaged before the parties' agreement, when he noted that no one had needed it when the Excavator arrived on the farm in the winter.  Lastly, while Mr. Cable vaguely mentioned that the seat was damaged as a result of the mud incident, Mr. Wyrick did not testify to any damages to this imminently visible piece of the Excavator, nor does Exhibit 5 detail whether the seat is simply worn from age.

[12] The remaining costs incurred per Plaintiff's Exhibit 6, $250 to clean the machine, $1,692 for the 2000 hour preventative maintenance on the Excavator, $129.58 for the EPA compliance fee, $46 for miscellaneous supplies, and the remaining roughly $40 for taxes are not compensable.  Most items represent regular maintenance costs rather than damages, and the entry for supplies is too vague to attribute to the damages rather than the maintenance portion of the bill.

that the Excavator incurred damage to its doors in the amount of $206.[13] Lastly, from Exhibit 8, the Court finds that the Excavator incurred $1,888.79 in damages to its windows. Together, these damages total $7,461.61.

While the machine incurred $7,461.61 in damages on the farm, the Defendant failed to rebut the presumption that these damages were caused by or the result of his negligence. The Defendant testified that he had little experience in operating the machine when he operated it without Mr. Wyrick's supervision, got it stuck in the mud, and caused many of the previously outlined damages. With respect to the damages caused from the fire, Mr. Wyrick testifed that it would be reasonable to try to put out a fire on one's property, rather than assessing whether the Defendant's actions in using the Excavator to put out the fire demonstrated "reasonable care" of the machine. Ultimately, the Defendant offered no evidence to establish that any of the $7,461.61 in damages to the Excavator occurred despite his "reasonable care" of the machine. Thus, the Fourth Cause of Action is GRANTED, with the Defendant's claim reduced by $7,461.61 for damages to the Excavator.[14]

### Fifth and Six Causes of Action: Additional Contract Damages

The Fifth and Sixth Causes of action seek damages for the Defendant's breach contract and the implied covenant of good faith and fair dealing. In essence, the Debtor requests additional damages for the Defendant's use of the Excavator in excess of forty (40) hours per week. However, the Court has no evidence of additional damages to the machine caused by the Defendant's overuse of the Excavator on his farm. Therefore, the Court will not award additional damages under the Fifth and Sixth Causes of action, which are DENIED.

---

[13] The estimated costs of painting the doors, "if needed" are too speculative for recovery. Moreover, the estimated costs for replacing the injectors on the machine, dated January 27, 2015, cannot be proximately linked to the Defendant's possession of the machine on the farm. The injectors were not listed as needing replacement or repair in Plaintiff's Exhibit 5, prepared days after the Excavator's return from the farm.

[14] The Defendant asserted offset/setoff and/or recoupment as an affirmative defense in his answer to the Complaint.

**Counterclaim: Damages**

The Defendant's Counterclaim, requesting reimbursement from the Debtor for the costs the Defendant incurred with respect to the Excavator while in use on his farm, must similarly be denied. The Counterclaim relies on N.C. Gen. Stat. § 25-9-207(b), which states that a secured party in possession of collateral may be reimbursed for "[r]easonable expenses . . . incurred in the custody, preservation, use, or operation of the collateral." Id. The uncontroverted testimony established the overuse of the Excavator by the Defendant, or use in excess of forty hours a week for over four months. For the same reason that the Court cannot award damages to the Debtor for the Defendant's overuse of the Excavator, the Court cannot reimburse the Defendant for expenses incurred in his use overuse of the machine. The Court cannot determine which of the Defendant's expenses are "reasonable." Therefore, the Defendant's Counterclaim for damages in the amount of $13,750.64 is DENIED, and the Defendant's proof of claim shall, accordingly, be reduced by $8,000, the amount the Defendant claimed he was owed for "repairs" on the machine while on his farm.

**Conclusion**

For the reasons as stated above, NOW, THEREFORE, IT IS HEREBY ORDERERED, ADJUDGED, AND DECREED that:

(1) The Defendant is deemed an allowed secured claimant in the amount of $38.39[15];

(2) The Second Cause of Action is DENIED;

(3) The Fourth Cause of Action is GRANTED;

(4) The Fifth and Sixth Causes of Action are DENIED; and

(5) The Counterclaim is DENIED.

[END OF DOCUMENT]

---

[15] While the Debtor owes the Defendant $7,500 on the loan, the Defendant owes the Debtor $7,461.61 in damages.

# SERVICE LIST

ALL PARTIES OF RECORD AS OF THE DATE OF THE ORDER SHALL BE SERVED BY THE BANKRUPTCY NOTICING CENTER